UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>            -v.-<br><br>JOHN FELIPE,<br>                              Defendant. | 18 Cr. 744-2 (KPF)<br><br>**ORDER** |

KATHERINE POLK FAILLA, District Judge:

Defendant John Felipe, who is currently incarcerated at the United States Penitentiary Hazelton in Bruceton Mills, West Virginia ("USP Hazelton"), has filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), citing, among other things, the ongoing COVID-19 pandemic, his pre-existing medical conditions, and the conditions of his confinement. The Government opposes the motion. As set forth in the remainder of this Order, the Court denies Mr. Felipe's motion.

## BACKGROUND

On October 18, 2018, Mr. Felipe was charged with three co-defendants in a three-count sealed indictment with narcotics conspiracy and firearms offenses. (Dkt. #2). Mr. Felipe was arrested and presented that day. (Dkt. #5, 8). The Presentence Investigation Report ("PSR") prepared in anticipation of Mr. Felipe's sentencing relates that Mr. Felipe was a member of a gang that sold crack cocaine in apartment buildings and on the streets of a Bronx neighborhood between 2016 and 2018. (PSR ¶ 14). In February 2017, Mr. Felipe and co-defendant John Brown were shot at by members of a rival gang;

Mr. Felipe pulled out a gun and tried to shoot back, but the gun did not fire because its safety was engaged. (*Id.* at ¶ 15).

On March 26, 2019, Mr. Felipe pleaded guilty to the second count of the Indictment, which charged him with using and brandishing a firearm in furtherance of a drug-trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(ii) and 2. (Minute Entry for March 26, 2019; PSR ¶ 6). Mr. Felipe's guilty plea was entered pursuant to a written plea agreement with the Government in which the parties stipulated that the applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") was 84 months' imprisonment, i.e., the mandatory minimum term specified by 18 U.S.C. § 924(c)(1)(A)(ii). (PSR ¶ 7).

Sentencing in the matter took place on September 26, 2019. (Dkt. #55 (sentencing transcript ("Sent. Tr.")); *see also* Dkt. #54 (judgment)). At sentencing, both sides sought the 84-month mandatory minimum term. (Dkt. #52 (defense sentencing submission); Dkt. #53 (Government sentencing submission)). The Court agreed:

> Mr. Felipe, in imposing sentence, I am obligated to consider certain sentencing factors. They are set forth in a statute that's known as Section 3553(a) of Title 18 of the United States Code. So some people call them 3553(a) factors. And they include the nature and circumstances of the offense, your history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide a just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes by you, and to provide you with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner. I must consider the

> Sentencing Guidelines, and I will speak about those momentarily. And in this case I must consider the need to avoid unwarranted sentence disparities amongst similarly situated defendants.
>
> In this case, because of the operation of 924(c), there is a statutory mandatory minimum of 84 months, and that ends up supplanting what would otherwise be the guidelines range in this case, and it also ends up supplanting what would otherwise be a concern about your criminal history. My recollection is you have two points. Let me look at that again.
>
> You have two points and then two additional points because of the commission of the offense while on probation. So you're in criminal history category III, but again, that doesn't actually impact the statutory mandatory minimum. That is 84 months. I can go above it, but I see no reason to here. It adequately reflects the seriousness of the offense and your criminal history. And to impose any more time, especially given the fact that you haven't really served much time in your prior cases, would seem to me to be unnecessary, and so I will not do that.

(Sent. Tr. 17-18).

Mr. Felipe filed a *pro se* motion for compassionate release that was received by the Court on November 12, 2020. (Dkt. #101). The Court reappointed Mr. Felipe's counsel under the Criminal Justice Act to supplement the motion (Dkt. #104), and a counseled supplement was filed on December 8, 2020 (Dkt. #109). In broad summary, Mr. Felipe argued that his age at the time of the offense, his rehabilitative steps while incarcerated, his medical issues (including asthma and irritable bowel syndrome), and the conditions of his confinement during the COVID-19 pandemic warrant compassionate release in the form of resentencing to time served or, in the alternative, to home confinement for the remaining term of imprisonment. (Dkt. #109). The

3

Government filed its opposition submission on December 16, 2020. (Dkt. #113). Mr. Felipe filed a counseled reply brief on December 26, 2020 (Dkt. #114), and a counseled supplement on January 20, 2021 (Dkt. #115).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant. A defendant may move under § 3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

When considering an application under § 3582(c)(1)(A), a court may reduce a defendant's sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i); *see generally United States* v. *Kimbell*, No. 21-288, 2021 WL 5441249, at *1 (2d Cir. Nov. 22, 2021). "The defendant has the burden to show he is entitled to a sentence reduction." *United States* v. *Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (citing *United States* v. *Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)).

The Second Circuit has very recently summarized the standards pursuant to which district courts must evaluate compassionate release applications:

> Section 3582(c)(1)(A) authorizes a court to reduce a previously imposed term of imprisonment upon finding that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). A court deciding a compassionate release motion can consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it]." *United States* v. *Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). But there are three requirements that must be satisfied before a court can grant such relief. First, absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities. Specifically, an inmate may ask the sentencing court to consider reducing a sentence only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States* v. *Saladino*, 7 F.4th 120, 124 (2d Cir. 2021) (holding that the government may waive or forfeit the exhaustion requirement). Second, a court must "consider[ ] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); see [*United States* v. *Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)]. Section 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed ... to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence imposed ... to provide the defendant with ... correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.

5

> § 3553(a). Third, the inmate must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed.

*United States* v. *Keitt*, No. 21-13-cr, 2021 WL 6058144, at *2 (2d Cir. Dec. 22, 2021); *see also United States* v. *Martinez*, No. 06 Cr. 987-1 (DC), 2021 WL 3374530, at *2 (S.D.N.Y. Aug. 2, 2021) (discussing what can constitute "extraordinary and compelling reasons").

## DISCUSSION

The parties are in agreement that the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) has been satisfied. (*See* Dkt. #109 at Ex. B (denial notice)). The Court thus proceeds to consider whether Mr. Felipe has identified "extraordinary and compelling reasons" warranting his release, and concludes that he has not.

The Court begins with Mr. Felipe's medical arguments. In this regard, Mr. Felipe argues that the conditions of his incarceration at USP Hazelton place him at a higher risk of contracting COVID-19 (or of having a more severe reaction if infected), because of the congregate setting, his existing medical conditions, and the inability of prison staff to handle an outbreak of the virus. Courts in this District have granted, and denied, compassionate release motions based on the existence of the COVID-19 pandemic and the risks of its transmission at prisons. *See, e.g.*, *United States* v. *Morrison*, No. 16 Cr. 551-1 (KPF), 2020 WL 2555332, at *2 (S.D.N.Y. May 20, 2020); *see also United States* v. *Bush*, No. 17 Cr. 611-4 (AT), 2021 WL 3097417, at *2 (S.D.N.Y. July 21,

2021) ("Courts have granted modified sentences in light of COVID-19 for inmates with illnesses or injuries that make them particularly vulnerable to COVID-19.  By contrast, in cases where an inmate does not suffer such illnesses or injuries, courts in this district have denied requests for compassionate release." (internal citations omitted)).

Recognizing the expansive discretion identified by the Second Circuit in *Brooker*, this Court continues to align itself with those courts that have found "that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."  *United States* v. *Nwankwo*, No. 12 Cr. 31 (VM), 2020 WL 2490044, at *1-2 (S.D.N.Y. May 14, 2020) (collecting cases); *see also United States* v. *Brady*, No. 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) ("Instead, compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry, made in the 'unique circumstances' and 'context' of each individual defendant.  In practice, courts in this district have considered the age of the prisoner; the severity and documented history of the defendant's health conditions, as well as the defendant's history of managing those conditions in prison; the proliferation and status of infections in the prison facility; the proportion of the term of incarceration that has been served by the prisoner; and the sentencing factors in 18 U.S.C. § 3553(a), with particular emphasis on the seriousness of

7

the offense, the deterrent effect of the punishment, and the need to protect the public." (internal citations omitted)).

Mr. Felipe has not demonstrated the existence of extraordinary and compelling circumstances in this case. He is serving the mandatory minimum sentence for a serious firearms offense. That offense was committed while Mr. Felipe was on probation in a different criminal case, and represents his third adult criminal conviction. Mr. Felipe has served 38 months of imprisonment, just over half of the 74-month term that BOP projects he will serve when credit for good behavior is taken into account. *See* https://www.bop.gov/inmateloc/# (last accessed Jan. 3, 2022).

Mr. Felipe is 26 years old, which places him at a comparatively low risk of contracting or dying from COVID-19. *See* COVID-19 Weekly Cases and Deaths per 100,000 Population by Age, Race/Ethnicity, and Sex, CENTERS FOR DISEASE CONTROL AND PREVENTION ("CDC"), https://covid.cdc.gov/covid-data-tracker/#demographicsovertime (accessed Dec. 29, 2021). Mr. Felipe adds, however, that he has various comorbidities that exacerbate his risk, including asthma and irritable bowel syndrome. (Dkt. #36 at 4 & Ex. G).

The CDC has periodically revised its analysis of comorbidities over the course of the COVID-19 pandemic, now focusing on conditions that place individuals at a higher risk of "get[ting] severely ill from COVID-19." *See* CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-

with-medical-conditions.html (accessed Dec. 29, 2021). Listed among these conditions is "moderate to severe" asthma. The medical information submitted to this Court in connection with Mr. Felipe's sentencing and with the instant motion indicates that his asthmatic condition is "mild," and thus not qualifying under the CDC's latest guidance. (*See, e.g.*, PSR ¶ 53 (reporting "mild" asthma)).

More fundamentally, the Court has reviewed with care Mr. Felipe's BOP medical records. These records make clear that Mr. Felipe has worked successfully with BOP medical professionals to address his health issues, chronic and otherwise. There is nothing to suggest that Mr. Felipe has been unable to care for himself or has been neglected by BOP medical personnel. Instead, Mr. Felipe appears to have received appropriate medical care while incarcerated. *See, e.g.*, *Brady*, 2020 WL 2512100, at *3-4 (acknowledging serious nature of defendant's medical conditions but denying compassionate release where conditions stable and managed in BOP facility); *see also United States* v. *Mood*, No. 19 Cr. 113 (VB), 2021 WL 242482, at *1 (S.D.N.Y. Jan. 25, 2021) (denying motion for compassionate release where defendant's "medical records reflect that his other health conditions have been well monitored and managed by BOP").

The Court also perceives a disconnect between Mr. Felipe's professed concern about contracting severe illness from COVID-19 and his refusal of the COVID-19 vaccine when it was offered to him in March 2021. "In such instances, courts in this district and elsewhere have nearly uniformly denied

9

compassionate release sought for medical reasons." *United States* v. *Robinson*, No. 17 Cr. 611-7 (AT), 2021 WL 1565663, at *3 (S.D.N.Y. Apr. 21, 2021) (citing *United States* v. *King*, No. 16 Cr. 478-11 (CS), 2021 WL 736422, at *2 (S.D.N.Y. Feb. 24, 2021)) (citation omitted); *see also United States* v. *Mack*, No. 19 Cr. 27 (PGG), 2021 WL 4148729, at *2 (S.D.N.Y. Sept. 13, 2021) ("Mack has also not shown that extraordinary and compelling circumstances justify his release. While Mack suffers from medical conditions that place him at increased risk of severe illness from COVID-19, he refused the COVID-19 vaccine when it was offered to him."); *United States* v. *Ellison*, No. 18 Cr. 834-9 (PAE), 2021 WL 2821108, at *5 (S.D.N.Y. July 7, 2021) ("[A]lthough the choice is Ellison's whether to become vaccinated, he undisputedly has the ability to do so and thereby further limit his COVID-19 risk."); *United States* v. *McIntosh*, No. 12 Cr. 72 (ER), 2021 WL 1660682, at *4 (S.D.N.Y. Apr. 28, 2021) ("McIntosh was offered the Pfizer vaccine in March 2021 and declined it.... McIntosh's access to the highly effective Pfizer vaccine mitigates any extraordinary and compelling health reasons justifying compassionate release." (citing *United States* v. *Bryant*, No. 06 Cr. 17 (LTS), 2021 WL 738838, at *2 (S.D.N.Y. Feb. 24, 2021))) (citation omitted); *United States* v. *Bullock*, No. 18 Cr. 528 (JMF), 2021 WL 1550424, at *1 (S.D.N.Y. Apr. 20, 2021) ("Mr. Bullock cannot satisfy his burden of showing that relief is warranted based on the fact that he was offered, and he refused, a COVID-19 vaccine.").

Federal courts, including this Court, have been appropriately concerned about the conditions of confinement at federal facilities. *See, e.g., United States*

v. *Thaher*, No. 17 Cr. 302-3 (KPF), 2020 WL 3051334, at *5-6 (S.D.N.Y. June 8, 2020), *reconsideration denied*, No. 17 Cr. 302 (KPF), 2020 WL 5202093 (S.D.N.Y. Sept. 1, 2020). To that end, this Court has scrutinized the BOP's COVID-19 Plan, *see* https://www.bop.gov/coronavirus/ (last accessed Jan. 3, 2022), as well as the BOP's listing of confirmed cases among inmates and staff at each facility. As of the date of this Order, the BOP has identified one current case of COVID-19 among inmates at USP Hazelton, and four current cases among staff members there. On balance, this Court concludes that the danger that Mr. Felipe faces from infection with COVID-19, even accounting for his proffered medical conditions, does not amount to an extraordinary and compelling reason for granting compassionate release. *Cf. United States* v. *Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

Mr. Felipe makes other arguments for compassionate release, including his youth at the time of the offense and his rehabilitative efforts while incarcerated. (*See, e.g.*, Dkt. #109 at 2-3; Dkt. #114 at 1-2). The Court recognizes that sister courts in this District have granted compassionate release motions predicated on the age of the defendant. *See, e.g.*, *United States* v. *Ramirez*, No. 98 Cr. 927 (CM), 2021 WL 5233512, at *5-7 (S.D.N.Y. Nov. 10,

11

2021) (collecting cases). And while it has given serious consideration to this argument, the Court ultimately does not believe that Mr. Felipe's age, considered alone or in tandem with his other arguments, amounts to extraordinary and compelling reasons for his release. Similarly, while the Court credits Mr. Felipe for the progress he has made in jail, it recognizes that rehabilitation alone is insufficient to merit compassionate release *Brooker*, 976 F.3d at 238 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that rehabilitation alone shall not be considered an extraordinary and compelling reason." (citation and quotation omitted)); *see also Nwankwo*, 2020 WL 7335287, at *3 (concluding that "[Defendant's] rehabilitative efforts [were] certainly commendable, but they do not, either alone or in combination with the other circumstances he cites, meet the extraordinary and compelling standard" (internal marks omitted)).

Separately, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting Mr. Felipe's motion. Those factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as the need "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(C). Mr. Felipe was a member of a gang who sowed drugs, violence, and fear in a Bronx neighborhood. He engaged in a shootout on East 187th Street with a rival gang, and it was only the fortuity of the safety on his gun that prevented him from hitting his target, or, worse yet, an unsuspecting passer-by. And Mr. Felipe engaged in this conduct while on probation for another offense. Accordingly, even if the Court

had found extraordinary and compelling circumstances on the facts presented, which it has not, it would deny Mr. Felipe's application based on its consideration of the § 3553(a) factors.[1]

## CONCLUSION

For the foregoing reasons, Defendant John Felipe's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is DENIED.

SO ORDERED.

Dated: January 3, 2022
New York, New York

KATHERINE POLK FAILLA
United States District Judge

---

[1]  To the extent that he has not otherwise done so, Mr. Felipe can pursue relief in the form of a furlough under 18 U.S.C. § 3622 or home confinement as contemplated in the CARES Act, Pub. L. No. 116-136 (2020), and the Attorney General's April 3, 2020 memorandum to the BOP.  The decision to grant any such relief, however, is reserved to the discretion of the BOP.